Henry G. Smith, J.,
delivered the opinion of the Court.
On the the 22nd day of January, 1866, the Sheriff of Shelby County, levied upon and took into possession, eight bales of cotton, as of the property of ’Win. B. Stewart, by virtue of a writ of original attachment at law, sued out in the Law Court of Memphis, against said Stewart, at the instance of Lacey & McGee. Before the seizure of the cotton by the sheriff, but after the issuance of the writ of attachment, Stewart had sold and delivered the cotton to Moore, Lewis & Govan, and received from them payment of the price. Neither Stewart, nor Moore, Lewis & Govan, were aware at the time of the sale, of the issuance of the writ of attachment. The cotton being in the hands of the sheriff, Moore, Lewis and Govan brought this action of replevin against the sheriff, and took the cotton from his possession. The plaintiffs in the attachment intervened and were substituted in the stead of the Sheriff as defendants. The writ of attachment was in the common form, directed against the estate generally of Stewart, not designating or mentioning the cotton in question. The writ commanded the sheriff *350 '“to attach so much of the estate of said W. B Stewart as will be of sufficient value to satisfy the debt,” etc.
Upon the issue to the jury, the verdict turned upon the direction of the judge, that the right of property in the cotton was vested in Moore, Lewis and Govan, by the sale; and if the sale was made before the levy of the attachment, the cotton was not liable to be so levied on, although the sale was made after the issuance of the writ; that the lien of the attachment accrued, not from the date of its issuance, but from the date of its levy.
The questionv is: In the case of a writ of attachment directed against the estate generally of the defendant, and not mentioning the particular property afterward levied on, the lien of the attachment accrues as against a purchaser of the property, from the time of the issuance of the writ, or from the time of its levy upon the property.
The question involves the construction of the sec. 3507, of the Code, which is in the terms following: “Any transfer, sale or assignment, made after the filing of an attachment bill in chancery, or after the suing out of an attachment at law, of property mentioned in the bill or attachment, as against the plaintiff, shall be inoperative and void.”
The history of this section of the Code, will furnish useful aid to ascertain its proper construction. It was drawn by the compilers of the Code, from the 9th section of chapter 43, of the Act of the General Assembly of February 15, 1836. This Act authorized *351 non-resident creditors of non-resident debtors, and also creditors of absconding debtors, and also sureties and accommodation indorsers of debtors about to remove, or moving, or absconding or carrying off tbeir property beyond the limits of this State, to file their bill in Chancery, and have the estates of such debtors attached. Prior to this Act, an original attachment upon bill in Chancery, could not be had, except in the few cases specified in sec. 2, of ch. 6, of the Act of 1801, and in sec. 4, oF cH. 11, of the Act of 1832, which need not here be described. The sec. 9, of ch. 43, of the Act of 1836, from which was drawn the sec. 3507, of the Code, is in these terms: “Any transfer, sale, assignment, etc., made by any non-resident or absconding debtor, after the filing of the bill, shall, as against the complainant or complainants, be inoperative and void.” By virtue of another section of the Act, the section just recited has been held to be applicable also to attachment bills in chancery, filed by accommodation indorsers and sureties under the provisions of the Act: 3 Head, 392, Burroughs vs. Brooks and others.
Comparing the original Act of 1836, with the sec. 3507 of the Code, it is observed that the latter differs from the former in material particulars; in some respects amplifying the scope and operation of the Act, and in others, limiting or qualifying its operation. The Act avoids sales, etc., as against attachments upon bills in chancery only, and as against attachments against three classes of debtors only, to-wit: non-resident, absconding, and those having sureties and accommodation indorsers; and avoids sales, etc., of any property of the *352 defendant in the proceeding. On the other hand, the section of the Code avoids sales, etc., as against attachments at law, as well as in chancery; and as against attachments, against all classes of debtors liable to the process; but, as to property of the debtor or defendant in the attachment, sales, etc., of which are void as against the attachment, qualifying words are employed, to-wit: “Property mentioned in the bill or attachment.”
The comparison makes manifest, that some change was intended, in regard to the property of the debtor subjected to the lien of the attachment. It is not to be supposed, that, so material a change of phraseology did not intend to work a change in the meaning and effect of the law. The superadded words are so peculiar, as to forbid the notion that they were intended to have no meaning. Giving to the section the effect of imposing a lien upon the property generally of the defendant in the attachment, reduces the effect of the section, to the precise effect of the original section of the Act of 1836, wherein these peculiar words do not exist, and bestows upon the section of the Code, the same meaning and effect as if the peculiar words were not contained in it.
A familiar canon of interpretation of statutes, is, that meaning and effect are to be given to all the words, unless there appear clear and controlling reasons for omitting to give them significance. The natural and obvious meaning of the words, in regard to the property subject to the lien — “property mentioned in the bill or attachment” — is, that the property which is subject to the lien, is that which is designated in the bill *353 or attachment. “Mentioned,” may, perhaps, have a meaning expressing less particularity of description than other words which might be employed. It is .possible that the gentlemen who gave shape to the phraseology of the Code, made use of this peculiar word, with the purpose to indicate a moderate degree of particularity of description. Be that as it may, the words interpolated into the section of the Code, must have ascribed to them a meaning, and that meaning is reasonably certain. It is easy to conjecture or suggest. Independent of statutory enactment, the lien of attachments accrued from the levy of the writ, and not from its issuance. This was so, not only in Tennessee, but nearly or quite universally so, in the States of the Union which authorized attachments of the kind: Drake on Attachments, section 221. In 1836, the General Assembly authorized the suing out, in these classes of cases, attachments upon bills in Chancery. A lien was given by the Act, in the cases specified, from the filing of the bill, upon all the property of the debtor, upon which the writ might be afterwards levied. Attachments issuing out of courts of law, remained as before, without any lien until levy. This continued until the enactment of the Code, of May 1, 1858. The compilers of the Code set about to reduce into system and harmony, the chaos of the Acts of the General Assembly, upon the. subject of original attachments, and obviously it was proper that the rule of liens should be uniform as to all classes of cases. Reasons are apparent why the accrual of the lien is more safe from the levy, than from *354 the issuance of the writ; and particularly where the bill or process is directed against the estate generally, than when it seeks to impound specific property. It may fairly be supposed, that these reasons influenced the compilers of the Code. Plainly, the language employed justifies the implication that weight was given to such reasons. Had it been the intention to give the lien from the filing of the bill or the issuance of the writ, upon all the property of the defendant, whether mentioned or not in the bill or writ, the language was unsuitable, which declares that a sale, transfer or assignment, shall be void as to property mentioned in the bill or writ. The natural and appropriate expression would have been that of the original Act of 1836, which avoids, in the cases specified, the sale, transfer or assignment, universally as to the defendant’s property, whether mentioned or not.
Argument can scarcely make the meaning more clear or certain, than the simple recital of the words themselves. Any sale, etc., of the property mentioned in the bill or writ, are not words of the same import, as, any sale of any of the property of the defendant — the difference is manifest. No liberality of construction can make them identical. The purpose of the peculiar words, is obvious. It was to give the lien only where the property attached was mentioned in the writ, and to put all classes of attachments, in this respect, in harmony with each other; and to leave the property of the debtor free from lien until levy, in cases whei’e the property attached is not mentioned in the bill or writ.
Such is the construction, it is believed, placed upon *355 tliis section of the Code, by the profession, nearly or quite universally, until the opinion announced in the case of Vance vs. Cooper, 1 Cold., 362, at Nashville, in 1866.
The discussion would not have been prolonged to this extent, but for the construction put upon the section of the Code, in that opinion. It is proper to state that the opinion went to publication inadvertently. A rehearing was granted in the case, which is still pending— not decided. Upon the further discussion and investigation which has been had upon the question, this Court is constrained to hold, that the original decision in that case was inadvertently made. Perhaps it may be maintained upon the facts existing in the case, that the conveyance was made after the filing of the attachment bill, and after the parties to the conveyance had notice of the fact that the bill was filed. How far such notice is entitled to affect the question, it is not our purpose now to decide.
Affirm the judgment.